## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**IVELLA DENNIS,**

       **Plaintiff,**

  **v.**                              **Civil Action No. 2:17cv529**

**NANCY A. BERRYHILL,**
*Acting Commissioner of*
*Social Security,*

       **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff Ivella Dennis seeks judicial review of the Commissioner of Social Security's denial of her claim for disability insurance benefits ("DIB"). Specifically, Dennis claims that the Administrative Law Judge ("ALJ") improperly relied on vocational expert testimony, failed to assess a reduction in work available at the light exertional level, and improperly assessed the credibility both of Dennis' treating physician and of Dennis herself. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure.

After reviewing the parties' briefs and the administrative record of the Commissioner's findings, this Report concludes that the ALJ complied with the law and regulations governing disability benefits under the Social Security Act. Accordingly, for the reasons stated in detail below, this report recommends that the court AFFIRM the final decision of the Commissioner by GRANTING the Commissioner's Motion for Summary Judgment (ECF No. 17) and DENYING Dennis' Motion for Summary Judgment (ECF No. 15).

## I.     PROCEDURAL BACKGROUND

On January 14, 2014, Dennis filed an application for DIB.  R. at 15.  She alleged that she was disabled as of March 27, 2013, due to bulging cervical and lumbar discs, hypertension, insomnia, depression, anxiety, fibromyalgia, and asthma.  R. at 284.  The state agency denied her application initially and again upon reconsideration.  R. at 85-108.  Dennis then requested an administrative hearing, which was conducted September 27, 2016.  R. at 35-79.

The ALJ denied Dennis's claims for DIB, finding she was not disabled during the period alleged.  R. at 15-26.  The Appeals Council denied Plaintiff's request for review.  R. at 1-5. Dennis then filed the Complaint in the present action seeking review of the administrative proceedings.  Compl.  (ECF No. 1).

## II.     FACTUAL BACKGROUND

Dennis was born on February 10, 1966, and was 50 at the time of the ALJ's decision.  R. at 24, 26.  She completed high school and some college, and has worked as a licensed practical nurse ("LPN").  See R. at 285.  Her medical history and the testimony before the ALJ are summarized here as relevant to her claims.

a.     History of Treatment.

Dennis alleged she became disabled on March 25, 2013, from a back injury incurred while pushing a dialysis machine at her job as an LPN.  R. at 370.  As of October that year, she was under the care of a pain management specialist and undergoing physical therapy.  Id.  She underwent an MRI examination which revealed left foraminal disc protrusion.  R. at 412.  Her treatment records reflect ongoing treatment for pain in her neck and back throughout the next year.  She had bariatric surgery in early 2014 that resulted in significant weight loss.  R. at 1613, 1616.

Dennis' medical records covering the two and a half years between her alleged onset of disability and the hearing generally reflect diagnostic evidence of mild to moderate changes in her back and neck and resulting pain that was effectively managed by physical therapy, medication and injection therapy.

For instance, her initial MRI, conducted on April 1, 2013, showed a "bulging disc protrusion and/or uncoathrosis at C5-C6 resulting in moderate left neuroforaminal narrowing." R. at 451. An additional MRI the next month showed "mild bilateral faceopathy and dorsal ligamentum prominence" in L4-L5 and "[m]oderate bilateral faceopathy" and a normal disc in L5-S1. R. at 388. In a December 2014 MRI, she had only mild bulging and arthropathy. R. at 1622-24.

Over the course of the treatment reflected in her records, her pain was effectively managed by a combination of medication, steroid injections, and radiofrequency ablation.[1] See, e.g., R. at 900-01 (steroid injection decreased pain symptoms as of May 2013); 918-20 ("0/10" pain after course of medication and physical therapy as of June 2013); 928 (capable of completing rowing exercises without pain or compensation in July 2013); 441 (40% pain reduction from percutaneous lumbar facet medial branch radiofrequency ablation in February 2013); 1785-89 (pain reported as "minimal" in October 2014 following significant weight loss from bariatric surgery); 1763-67 ("feeling great" in February 2015 after lumbar facet ablation with pain reported as 3/10 with medication).

---

[1] "Radiofrequency ablation uses an electric current to heat up a small area of nerve tissue to stop it from sending pain signals. It can provide lasting relief for people with chronic pain, especially in the lower back, neck and arthritic joints." Radiofrequency Ablation, Cleveland Clinic (last accessed June 15, 2018), https://my.clevelandclinic.org/health/treatments/17411-radiofrequency-ablation.

Dennis was also consistently found to have generally good strength in her extremities. E.g. R. at 577 (upper extremities in April 2013); 403 (5/5 in all muscle groups except 4/5 in wrist extensors in July 2013); 629-30 (full strength in July 2013); 425 (4/5 strength in wrist extensors); 1828 (full strength in legs and arms in April 2014).

The medical records most relevant to Dennis' present claims are those from treatment with her primary care physician, Dr. Elaine M. Colby, who practiced with the 59th Medical Wing at Lackland Air Force Base in Texas. Dennis faults the ALJ for not according more weight to the opinions Dr. Colby expressed on a series of disability evaluation forms she completed in 2013. Pl.'s Br. at 10-24 (ECF No. 16).

On May 10, 2013, Dr. Colby filled out a Medical Request Form, to be submitted to an insurance company in connection with Dennis' disability claim. R. at 390. On that form, Dr. Colby diagnosed Dennis with cervical radiculopathy, resulting in severe neck pain, which radiated down her arms and created numbness and tingling. Id. Dr. Colby wrote that Dennis could not lift, push, or pull because of her pain. Id. Dr. Colby said the pain would keep her out of work until at least June 2013 if accommodations were made for her pain when she turned her neck and flexed her neck and at least until July 2013 if no accommodations were made. On July 2, 2013, on a similar form, Dr. Colby reiterated her previous opinions but revised her estimate regarding when Dennis could return to work: she expressed doubt as to whether Dennis could return to work because her job in the healthcare industry required frequent lifting, pushing, and pulling. R. at 389. In October 2013, Dr. Colby wrote a letter to an unknown addressee opining, that

> Currently [Dennis] is unable to walk, stand, or sit more than 10 minutes at a time before needing to change position or rest. She is unable to do fine manipulation of her hands for more than 5 minutes before needing to rest. She is unable to bend, squat, stoop for more than 5 minutes. She is also unable to lift, push, pull or

carry more than 5 [pounds] due to pain and paresthesias in her neck and left arm resulting from cervical radiculopathy.

R. at 391.

These three documents contain the opinions Dennis claims the ALJ did not give due weight to when developing his finding regarding her RFC. Pl.'s Br. at 10-24 (ECF No. 16). However, Dr. Colby also produced many treatment records, the contents of which the ALJ cited in evaluating the conclusions Dr. Colby articulated in the disability forms and medical source statement. Moreover, Dennis' back pain was primarily treated by specialists, including pain management specialists Dr. Yuril Borshch and Physician Assistant Derek Rigby at Precision Spine and Pain Management. The court will review those records in more detail here because the ALJ relied on these records in discounting Dr. Colby's opinions about Dennis' functional limitations.

On April 22, 2013, Dr. Colby examined Dennis and noted a slightly decreased range of motion in her cervical spine, no spinous process tenderness, mild tenderness to pressure in the paraspinous muscles and trapezius, and full strength in her upper extremities. R. at 577. Dennis reported to Dr. Colby it was "somewhat difficult" to take care of things at home. Id.

On May 10, 2013, Dr. Colby examined Dennis again. Dennis reported to her that her pain had "improved" after taking pain medication. R. at 570. Dennis complained of being unable to work as a nurse because she could not push a heavy dialysis machine or lift patients. Id. She also complained of not being able to drive because of pain when she attempted to turn her head. Id. Dr. Colby does not record any physical examination on this visit that corroborated Dennis' complaints. R. at 569-71. Dr. Colby recorded Dennis was able to do moderate exercise for 30 minutes most days of the week. R. at 571.

On July 3, 2013, Dennis saw PA Rigby. R. at 402. PA Rigby conducted a physical examination. Id. He found little of note in her cervical spine except tenderness over her paraspinous soft tissue on the left side and limited cervical flexion due to pain. In her lumbar spine, she was limited by pain in flexion, extension, and rotation. R. at 403. She did, however, have full muscle strength in her lumbar spine and no difficulty walking. Id. He prescribed a cervical epidural steroid injection and a lumbar facet medial branch block. Id.

On July 8, 2013, Dr. Colby saw Dennis again. Dennis reported another onset of pain within the last three to four days, attributing it to a physical therapy session on July 5, 2013. R. at 550-51. She reported her pain was 8/10. R. at 551. Dennis reported that she had chronic pain in her lower back that had worsened "over the last few months." Id. Dennis reported pain on her left side that worsened with movement but improved with medication. Id. Dr. Colby examined Dennis on this occasion and noted reduced range of motion in her cervical spine, no spinous process tenderness, and mild tenderness to pressure in the paraspinous muscles and trapezius. Id. Dennis reported she was no longer doing moderate exercise for 30 minutes most days of the week. Id.

PA Rigby saw Dennis again on July 31, 2013, after she received a cervical epidural steroid injection. R. at 407. Dennis reported significant a "40-50%" decrease in pain and a "25%" increase in her ability to perform activities of daily living. Id. On August 8, 2013, Dr. Borshch administered Dennis a diagnostic lumbar facet nerve block, which reduced her pain 70%. R. at 414, 417.

In two appointments on 4 and 17 October 2013, Dr. Colby made notes regarding Dennis' pain at that time. She noted Dennis complained of only being able to walk for 5-10 minutes. R. at 512. Dennis also said she could only do limited household tasks due to pain. Id. Dennis said

she felt unable to return to work as a dialysis nurse because the pain kept her from being able to lift patients and the dialysis machine.   Id.   Again, Dr. Colby's notes reflect no physical examination that corroborated Dennis' complaints.   See R. at 510-20.

On 22 October 2013, during a follow-up appointment to an emergency room visit for pain, Dennis complained of severe, sudden-onset neck pain on her left side.  R. at 489.  Dr. Colby's examination revealed limited cervical spine flexion and lateral rotation due to pain.  R. at 491.  Two days later, Dennis reported her pain had diminished after taking pain medication. R. at 488.  On 24 October, 2013, Dennis reported her pain was 5/10.  R. at 484.

On October 30, 2013, Dennis received another cervical epidural steroid injection from Dr. Borshch.  R. at 426.  Nearly three weeks later, she reported 50% improvement in her pain score with 10% improvement in her ability to conduct daily activities.  R. at 429.  On December 27, 2013, Dennis received lumbar facet radiofrequency ablation.  R. at 439.  This resulted in a 40% reduction in pain and a 10% improvement in her ability to conduct daily activities.  R. at 441.

On January 3, 2014, Dr. Colby recorded Dennis' report that her pain had improved to the point where she could lift ten pounds, walk for 20-30 minutes, and "do more chores around the house."  R. at 470-71.  Again, Dr. Colby recorded no physical examination results corroborating Dennis' reported functional limitations.  See id.

On February 11, 2014, Dennis was examined by Dr. Borshch and PA Rigby together.  R. at 441-43.  She had non-radiating neck pain, walked normally, and had a normal range of motion except for some limitations in her cervical spine.  R. at 441-42.  Throughout the spring of 2014, Dennis reported multiple times that her injection therapy and physical therapy were relieving her

pain. See, e.g., R. at 1598 (Mar. 11, 2014), 1601 (Mar. 26, 2014), 1604 (Apr. 28, 2014), 1613 (May 29, 2014).

On April 24, 2014, Dr. Colby saw Dennis for complaints of dizziness and excessive sweating. R. at 1825-28. Dennis reported 0/10 pain. R. at 1826. She reported having no generalized pain. R. at 1827. Dr. Colby performed a physical examination of her and recorded that Dennis had no mobility limitations. Id. She also reported normal strength in all extremities. Id.

On May 4, 2014, Dr. Colby saw Dennis to follow up on her back and neck pain. R. at 1817. Dennis complained of "on and off" pain and reported she felt 7/10 pain on that day. R. at 1818. Dennis also reported doing moderate exercise for 30 minutes most days of the week. R. at 1820. Dr. Colby conducted a physical examination. The only recorded results of that examination related to Dennis' functional capacity were that Dennis had full strength in her extremities and a normal gait. Id. at 1819-20.

On November 14, 2014, Dennis saw Dr. Colby to follow up on her neck and back pain. R. at 1785. Dr. Colby noted that Dennis reported some improvements in her pain after her bariatric surgery. R. at 1787. The only note Dr. Colby made regarding Dennis' functional abilities was that she engaged in moderate exercise for 30 minutes most days of the week. Id.

On December 19, 2014, Dr. Borshch administered Dennis another lumbar radiofrequency facet ablation after she suffered a recurrence of back pain the previous month. R. at 1619-20. This procedure reduced her pain to "0/10." R. at 1621.

On February 12, 2015, Dennis saw Dr. Colby to follow up on her neck and back pain. R. at 1766. Dr. Colby noted that Dennis reported "feeling great overall." Id. Dr. Colby reported Dennis had "been hired for front sales position [with the Postal Service] but may need to work in

the back and might occasionally do heavier lifting. She says she can comfortably lift up to 70 [pounds] but cannot carry more than 50 [pounds]."[2] Id.

On May 1, 2015, Dennis saw PA Rigby again and reported that the previous lumbar radiofrequency facet ablations had reduced her pain by 70% for up to six months. R. at 1633. She reported her pain was reduced to 3-4/10 when she took medication. Id.

c.    Testimony Before the Administrative Law Judge.

Dennis testified before the ALJ at her hearing on September 27, 2016. She described her past work history as well has how the pain that resulted from her injuries in the 2011 car accident has affected her life. R. at 41-69. She testified she had "sciatic pain" that kept her from performing her duties as a licensed practical nurse. See R. at 43. She testified that repetitive motions like using the phone was particularly difficult. R. at 45-46. She testified she was able to drive for a short period of time. R. at 41-42. She also told him she was able to lift her dog, which weighed 9.5 pounds. R. at 61. She testified she could stand for approximately 15 minutes, sit for ten minutes, and could walk half a block. R. at 61-62.

The ALJ also heard testimony from Howard Marnan, a vocational expert ("VE"), to assist him in determining whether there were jobs in the national economy Dennis was capable of performing. See R. at 72-81. He presented the VE with the following hypothetical person:

> An individual of the same age, education, and work experience as Ms. Dennis who could lift ten pounds frequently and 20 pounds occasionally. Stand and walk for two hours, could sit for six hours, only occasionally climb, work around ropes, ladders or scaffolds and stoop. And unlimited balancing, kneeling, crouching and crawling.

---

[2] This note in Dr. Colby's records conflicts with Dennis' testimony to the ALJ. At the hearing, she told the ALJ she had been considered for employment with the Postal Service but not hired because she could not lift, bend, or pivot as the job would have required. See R. at 59. Also, Dennis told the ALJ that, although Dr. Colby's records reflect that she could lift up to 70 pounds, she could, in fact, only lift 9.5 pounds. R. at 60-61.

R. at 75.  The VE testified that there were jobs in the national economy in significant numbers a person so situated could perform.  Id.  Specifically, he identified the following jobs, classified as "light" work in the DoT: at least 300,000 cashier jobs; at least 14,000 laundry folder jobs; at least 14,000 ticket seller jobs.  Id.

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).[3]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance.  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)."  Craig, 76 F.3d at 589.  The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858

---

[3] Although the ALJ conducted the hearing in Texas, on all issues of federal law, this court applies the case law binding on the courts in the Fourth Circuit.  See Bradley v. United States, 161 F.3d 777, 782 n. 4 (4th Cir. 1998) (applying Fourth Circuit precedent to issues of federal law in a case transferred from a court in the Fifth Circuit because "unlike state law, federal law is presumed to be consistent and any inconsistency is to be resolved by the Supreme Court.").

F.3d 858, 868 (4th Cir. 2017).  Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.    ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits, and be under a "disability" as defined in the Act.  42 U.S.C. §§ 416(i), 423.  The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).  To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.  20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability.  The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

(1)    Is the individual involved in substantial gainful activity?

(2)    Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

(3)     Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

(4)     Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

(5)     Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability.  An affirmative answer to question three or five establishes disability.  See 20 C.F.R. §§ 404.1520, 416.920.  The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Lewis, 858 F.3d at 861 (citing Monroe v. Colvin, 826 F.3d 176, 179-80 (4th Cir. 2016)).  When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age.  Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)).  At all steps the ALJ bears the ultimate responsibility for weighing the evidence.  Hays, 907 F.2d at 1456.

In this case, after conducting the foregoing analysis, the ALJ concluded that Dennis will meet the insured status requirements from her alleged disability onset date, March 27, 2013, through December 31, 2018, well after her March 15, 2016 hearing.  See R. at 15, 18. Ultimately, however, the ALJ concluded she had not been under a disability within the meaning of the Social Security Act during that time.  See R. at 16, 26.

At step one, the ALJ found Dennis had not engaged in substantial gainful activity from her alleged disability onset date to the date of the hearing. R. at 18. At step two, the ALJ found that Dennis suffered from severe impairments related to her cervical and lumbar spine; myofascial pain syndrome; and obesity. Id. (citing 20 C.F.R. §§ 404.1521, 416.921). At step three, the ALJ found that Dennis did not suffer from a listed impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. R. at 20. The ALJ also developed a finding regarding Dennis's residual functional capacity ("RFC"). He determined she had numerous limitations, including the limitation that she was able

> To perform less than a full range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, [Dennis] can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk two hours in an eight-hour workday, and sit about six hours in an eight-hour workday. However, the claimant is further limited to . . . occasional stooping and climbing of ramps, stairs, ladders, ropes, or scaffolds, and unlimited pushing or pulling (including operation of hand and foot controls).

R. at 20. At step four, the ALJ found that Dennis had past relevant work at the substantial, gainful activity level, but she could no longer perform this past work due to her severe impairments. See R. at 18, 24. At step five, relying on the testimony of the VE, the ALJ concluded that jobs existed in significant numbers in the national economy which Dennis could perform. R. at 25. Consequently, the ALJ determined Dennis did not have a qualifying disability during the relevant period and denied her claim for DIB. R. at 26.

Dennis now argues the ALJ erred in three ways. First, she argues the ALJ failed to properly assess whether her functional limitations were so severe as to have "significantly reduced" the number of jobs available at the light exertional level that she could perform. She claims this further resulted in an incorrect application of the Grid Rules, requiring remand. Second, she claims the ALJ failed to provide an adequate explanation for why he discounted Dr.

Colby's opinions regarding her functional limitations.   Third, she argues the ALJ's RFC determination was prejudicially flawed because he did not consider Dennis' work history in evaluating her credibility.

a.     The Administrative Law Judge Properly Assessed the Impact Dennis' Ability to Do Only a Limited Range of Light Work Would Have on the Number of Jobs Available to Her.

Dennis first argues the ALJ erred in concluding that a significant number of jobs exist in the national economy that she could perform, even with the severe limitations he assigned in her RFC.  Specifically, she argues that the ALJ improperly applied the Grid Rules, which may direct a finding of disability based on an individual's age, RFC, and other vocational factors.  She claims the ALJ was required to analyze the degree to which her RFC eroded the light occupational base before concluding she was not disabled under the Grid Rules.

The ALJ found that Dennis had the RFC to perform more than sedentary but less than the full range of light work.  He therefore determined her RFC placed her between exertional levels under the Grid Rules.  Ultimately, the ALJ concluded, with the assistance of a VE, that Dennis was capable of performing specific light-level jobs, which exist in significant numbers in the local economy.

When an individual's RFC falls between exertional levels the Grid Rules do not direct a finding on disability.   Golini v. Astrue, 483 F. App'x 806, 808 (4th Cir. 2012).   The Commissioner "may rely on the [Grid Rules] only in 'appropriate cases.'"  Id.  The Grids are not appropriate when any "one or more of the criteria of a [grid] rule are not met."  SSR 83-10, 1983 WL 31251, at *1 (Jan. 1, 1983).   The Grid Rules and SSR 83-12 both note that when a claimant's RFC is between exertional levels, then not all criteria are met, and the Grid Rules do not direct a conclusion. 20 C.F.R. § 404, Sbpt. P, App. 2, 200.00(d); SSR 83-12, 1983 WL 31253, at *1 (Jan. 1, 1983).  Rather, in these cases, the Grid Rules provide a framework and

guidance to the ALJ as the decision-maker.  Golini v. Astrue, No. 2:10cv525, 2011 WL 4409223, at *5 (E.D. Va. Aug. 16, 2011), aff'd, 483 F. App'x 806, 808 (4th Cir. 2012); 20 C.F.R. Pt. 404, Sbpt. P, App. 2, 200.00(d); see SSR 83-12, 1983 WL 31253.  Additionally, when the ALJ imposes exertional and nonexertional limitations (i.e., a climbing, balancing, stooping, kneeling, or crawling limitations), the Grid Rules do not apply and instead are used "in conjunction with the definitions and discussions provided in the rest of the regulations, as a framework for decisionmaking."  SSR 83-14, 1983 WL 31254, at *1; see also Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) ("[W]hen a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines."); 20 C.F.R. § 404.1569a; 20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2).

In this case, because the ALJ determined that Dennis could not do the full range of light work but could do more than sedentary work; and because her RFC included nonexertional limitations, the Grid Rules did not direct a conclusion of either disabled or not disabled.  Instead, the Grids were used as a framework by the ALJ at steps four and five to determine if she was capable of performing past relevant work or any other work.  See 20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2).

To determine disability when the RFC indicates a combination of exertional and non-exertional limitations, the ALJ must first consider whether the claimant is disabled based on strength (exertional) limitations alone.  20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2); 20 C.F.R. § 404.1569a(d).  As noted, Dennis was not disabled based on exertional limitations alone, as her RFC was between the sedentary and light levels, and therefore, Grid Rule 201.10 did not direct a finding of disabled.

Next, the ALJ must, in addition to using the Grids as a framework, consider all the

relevant factors and principles set forth in the regulations. 20 C.F.R. Pt. 404, Sbpt. P, App. 2 § 200.00(e)(2); see also SSR 83-14, 1983 WL 31254, at *3. In fact, the Agency policy statement specifically suggests that the ALJ consult a vocational expert in cases where the claimant has a combination of exertional and non-exertional limitations. SSR 83-14, 1983 WL 31254, at *4; see also Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983) (finding use of a VE helpful and, in some cases, necessary). On doing so, a finding of not disabled should include: "(1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country." SSR 83-14, 1983 WL 31254, at *6.

In this case, Dennis suffers from exertional and nonexertional limitations beyond those included in the DOT's definition of light work. See R. at 20-24. Consequently, the ALJ properly called a vocational expert to testify as to whether there were a significant number of jobs in the national economy that Dennis could perform. At the hearing, the ALJ asked the vocational expert to testify as to the employability of a hypothetical individual of the same age, education, work experience, and functional capacity as the ALJ assigned Dennis. R. at 75. In response, the vocational expert testified that there are thousands of jobs available in the national economy to a person with the limitations the ALJ described. R. at 75 (at least 300,000 cashier jobs; at least 14,000 laundry folder jobs; at least 14,000 ticket seller jobs). The ALJ also confirmed that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles and concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate." R. at 26.

While not directly contesting the VE's testimony, Dennis argues that the ALJ erred by failing to conduct a special analysis of how her particular RFC limitations eroded the light work occupational base.  She claims such an analysis was required because the assessment under the Grid Rules is the "initial query at step 5," and thus the ALJ was required to specifically calculate erosion in the light occupational base to ensure that a finding of disability was not directed by the Grid Rules.  Pl.'s Br. at 5 (ECF No. 16).  But the vocational expert's testimony clearly indicates that the ALJ considered Dennis' specific limitations in concluding that Dennis could perform one of the jobs the VE identified as falling within the DOT's definition of light work as further limited by her postural limitations.  R. at 25-26.  The ALJ's opinion reveals that he fully understood that the light duty occupational base was significantly eroded as a result of the limitations he included in Dennis' RFC.  See id.  But, this erosion did not dictate a finding of disability.  See Bradshaw v. Berryhill, No. 1:16cv969, 2017 WL 962768 at *4 (E.D. Va. Feb. 3, 2017), R&R adopted 2017 WL 958105 (March 9, 2017) aff'd 704 F. Appx. 266 (4th Cir. 2017) (concluding Grid Rules did not direct finding of disability despite VE testimony identifying only one job within Claimant's RFC).  Here, the ALJ did not rely upon the Grid Rules to direct a finding that Dennis was not disabled.  Rather, he used the Grids as a "framework" to assess her ability to adjust to new work.  The ALJ then made an individualized consideration of how Dennis' unique limitations narrowed the range of jobs available to her and, with the assistance of testimony from the VE, he determined that the Dennis was capable of performing jobs available in the national economy.  No further "special analysis" was needed, so the lack of such an analysis does not justify remand.  See Watson v. Astrue, 396 F. App'x, 953, 959 (11th Cir. 2010).

b.    The ALJ Relied on Substantial Evidence When Giving Weight to Conflicting Medical Opinion Evidence.

Dennis next argues the ALJ erred when he discounted the opinions of her treating primary care manager, Dr. Colby, and omitted or significantly reduced the functional limitations Dr. Colby articulated in three different documents. Pl.'s Mem. at 11-22 (ECF No. 16).

When the ALJ determines whether the claimant has a medically-determinable, severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered.  20 C.F.R. §§ 404.1512, 404.1527, 416.912, 416.927. When the record contains a number of medical opinions from different sources that are consistent with each other, the ALJ is required to use that evidence to make a determination on disability.    20  C.F.R.  §§  404.1527(c),  416.927(c).    If,  however,  the  medical  opinions  are inconsistent with each other or other evidence, the ALJ must evaluate the opinions and assign them persuasive weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6), (d), 416.927(c)(2)-(6), (d).

Ordinarily, a treating source's opinion will be given controlling weight if it is well-supported by medically acceptable diagnostic methodology and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Lewis, 858 F. 3d at 867; Craig, 76 F.3d at 590; SSR 96-2P, 1996 WL 374188 (July 2, 1996).  But, the ALJ need not accept opinions from a treating source in every situation.  For instance, when the source opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion is inconsistent with other evidence, or when it is not otherwise well-supported it is due no special deference.  20 C.F.R. §§

404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d); <u>Craig</u>, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" <u>Dunn v. Colvin</u>, 607 F. App'x 264, 267 (4th Cir. 2015) (citing <u>Scivally v. Sullivan</u>, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded.[4]  <u>See</u> <u>Lewis</u>, 858 F. 3d at 868; <u>Dunn</u>, 607 F. App'x at 267. Because the regulations require the ALJ to evaluate every medical opinion, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in [the regulations]." SSR 96-2P at *5.

The ALJ must consider the following when evaluating a treating source's opinion:  (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically empower the ALJ—not the treating source—to determine whether a claimant is disabled under the Act.   20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Additionally, the failure to expressly address each factor set forth in 20 C.F.R. § 404.1527 is harmless error if the ALJ's ultimate conclusion is supported by substantial evidence.

---

[4] The requirement to explain decisions regarding the weight accorded to medical evidence is not limited to evidence from treating physicians: in general, the ALJ must explain the reason she gave weight to <u>any</u> opinion before her. 20 C.F.R. § 404.1527(f)(2)(ii).

See Ambrose v. Astrue, 2:11cv683, 2013 WL 1308981, at *12 (E.D. Va. Mar. 28 2013) (citing Morgan v. Barnhart, 142 Fed. App'x 716, 723 (4th Cir. 2005)).

Dennis contends that the ALJ erred by inadequately explaining why he discounted opinions contained in the disability evaluation forms and medical source statement produced by her treating physician, Dr. Colby. The ALJ explained that he assigned little weight to the functional limitations described in Dr. Colby's medical source statements

> because it was largely speculative based on claimant's subjective complaints, and not the medical imaging of record, which showed at most mild to moderate degenerative changes not likely to produce the limitations cited by Dr. Colby. Furthermore, Dr. Colby failed to cite a single exam in which such limitations were noted, thus diminishing the probative value of her statement.

R. at 22. Dennis claims this assessment is insufficient under the rules and not supported by the evidentiary record. The court disagrees.

To begin with, the ALJ carefully reviewed the relevant medical evidence, including the evidence of Dr. Colby's treatment and the treating specialists, Dr. Borshch and PA Rigby, who managed and treated Dennis' back pain. The only opinions which he specifically discounted do not appear in treatment records, but in two "Medical Request Forms," completed by Dr. Colby on a form created by Disability Management Solutions, and a separate letter drafted by Dr. Colby with no addressee listed. R. at 389-91. The creator of the forms explains their purpose at the top of the form: "We are evaluating your patient's disability claim. Please respond to the following questions." R. at 389-90. The May 2013 form includes comments from Dr. Colby that, due to severe, radiating neck pain, Dennis could not lift, push, or pull at work; nor could she turn her head or flex her neck without pain. R. at 390. Dr. Colby anticipated Dennis would be able to return to work in July 2013. Id. The July 2013 form includes comments from Dr. Colby merely that Dennis was "unable to return to work at current time," justifying this conclusion on

the grounds that Dennis job as an LPN "requires frequent lifting, pushing, pulling.  R. at 389.

Dr. Colby was unable to say when Dennis would be able to return to her job as an LPN.  Id.  The

October 2013 letter Dr. Colby drafted records the following opinions:

> Currently, she is unable to walk, stand, or sit more than 10 minutes at a time
> before needing to change position or rest.  She is unable to do fine manipulation
> of her hands for more than 5 minutes before needing to rest.  She is unable to
> bend, squat, stoop for more than 5 minutes.  She is also unable to lift, push, pull,
> or carry more than [five pounds] due to pain and paresthesias in her neck and left
> arm resulting from cervical radiculopathy.

R. at 391.  Dennis relies on these comments from Dr. Colby to support her argument for

remand.  Pl.'s Mem. at 11-12 (ECF No. 16) (citing R. at 389-91).

These few portions of the record do not justify reversal of the ALJ's decision to give

limited weight to the very specific opinions Dennis purports to rely on.  The ALJ's decision to

afford the opinions in these documents little weight was supported by substantial evidence.  He

cited voluminous evidence in support of his decision to discount Dr. Colby's opinions regarding

Dennis' functional limitations.  For instance, he noted there was "no clear history of weakness in

the upper extremities."  R. at 22 (citing R. at 628).  He noted other treatment records besides Dr.

Colby's disability evaluations revealed 5/5 muscle strength, except for 4/5 in wrist extensors,

intact sensation, no neurological deficits, and no tenderness over the lumbar spine with a non-

antalgic gait; that examination did indicate neck flexion was "limited" due to pain but that

rotation and lateral flexion movements were normal.  R. at 22 (citing R. at 402-03, 412).  The

records reflected a generally favorable response to pain treatment and medication.  R. at 22-23

(citing R. at 440-44, 1791-94, 2165-67 (treatment records from Dr. Borshch and PA Rigby)).  He

also noted that her mood and affect were within normal limits, with no indications of acute

distress.  R. at 22 (citing R. at 605).  The ALJ made a particular observation of Dennis assertion

that her pain level while on pain management medication, which she reported was 3/10, was

more in in line with the mild to moderate objective findings in her record than the debilitating pain Dr. Colby described without citation in her disability evaluations. <u>See</u> R. at 22 (citing R. at 662).

The ALJ also took note of medical imaging from December 2014 that showed "largely stable cervical and lumbar spine changes" with only mild and moderate spinal deformations. R. at 23 (citing R. at 879, 881). The ALJ concluded "these findings support no more than mostly mild, to moderate pain levels without meds." R. at 23. In addition, the hearing occurred in 2016 and Dr. Colby's challenged opinions were all from 2013 and some were temporally limited. As the ALJ noted, by early 2015 following successful radiofrequency ablation, an examination revealed "no back tenderness, good heart and lung function, no headache, no neck tenderness, and normal mood and affect, and she was 'doing great' with regard to her cervicalgia. R. at 23 (citing R. at 1050-51, 1059). In September 2015, Dennis reported her pain on medication was reportedly 4-5/10, which the ALJ characterized as moderate. R. at 23 (citing R. at 2150). He concluded by noting that records from October 2015 indicate that her condition was stable and concluded from the lack of later treatment records that there must have been "at least a little medical improvement." R. at 23 (citing R. at 2148-49).

The ALJ's opinion carefully considered the entire range of medical evidence. There were conflicts in the evidence before the ALJ, requiring him to evaluate the credibility of the source of each piece of evidence. He did exactly that. Because the ALJ's decision to give little weight to certain opinions of Dennis' treating physician was supported by substantial evidence, that decision does not warrant remand.

c.   <u>The Administrative Law Judge Relied on Substantial Evidence in Deciding Not to Credit Dennis' Testimony over the Medical Evidence in Dennis' Treatment Records.</u>

Dennis also urges the court to remand the case because the ALJ did not discuss her work history when assessing her credibility. See Pl.'s Mem. at 16 (ECF No. 19). The ALJ is required to consider all relevant non-medical evidence in making a credibility determination, but only to the extent such evidence "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(3). The ALJ did not find that Dennis' testimony merely lacked support from medical evidence: he found it directly contradicted the medical evidence. See R. at 23-24; c.f. Lewis, 858 F.3d at 867 (ALJ must credit claimant's testimony when such testimony is not contradicted by other evidence in the record). When presented with contradictory evidence, it is the ALJ's task to consider the conflicting evidence, assess its credibility, and then decide which of the evidence in the record is most persuasive.

It is a fundamental principle of judicial review of Social Security actions that the ALJ's credibility finding receives great deference. See Eldeco, Inc. v. N.L.R.B., 132 F.3d 1007, 1011 (4th Cir. 1997). A claimant's history of employment before and during the alleged period of disability can support the credibility of his testimony that he is not working because he physically cannot do so. See, e.g., Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). However, the ALJ's mere failure to mention Dennis' work history explicitly does not warrant remand or reversal in the face of his otherwise supported findings. See, e.g., Hunter v. Berryhill, No. 3:17cv112, 2018 WL 310138, at *15 (E.D. Va. Jan. 5, 2018). "Plaintiff's work record, standing alone, is insufficient to contravene an ALJ's credibility finding." Id. (citing Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); Laws v. Astrue, 3:08cv722, 2009 WL 3270770, at *6 (E.D. Va. Oct. 8, 2009)). In short, work history is just one of many factors an ALJ can consider if it is relevant to his determination of the claimant's credibility.

Even if the ALJ did not address Dennis' work history, omitting discussion of one of the forms of evidence listed in 20 C.F.R. § 404.1529(c)(3) is harmless error not warranting remand so long as the conclusions in the opinion are otherwise supported by substantial evidence. See, e.g., Terrell v. Colvin, No. 2:14cv14, 2015 WL 966256, at *14 (E.D. Va. Mar. 4, 2015) (citing Ambrose v. Astrue, 2:11cv683, 2013 WL 1308981, at *12 (E.D. Va. Mar. 28, 2013) (failure to mention one of the factors prescribed for the consideration of medical evidence under 20 C.F.R. § 404.1527 is harmless error)). As described throughout this Report and Recommendation, the ALJ's conclusions were supported by substantial evidence, making any failure to fully treat Dennis' work history harmless error.

The ALJ appropriately considered Plaintiff's past work history when rendering his decision. Dennis testified at length about her past work history in the medical field during the hearing, including her efforts to find a job after being terminated from her last position as a licensed practical nurse. See, e.g., R. at 42-45. The VE also testified about her prior work. R. at 71-75. The ALJ acknowledged her work history as influencing his determination regarding her disability, though he did not discuss the significance of it in depth. R. at 24-26. Given the extensive medical record the ALJ relied upon in assessing Dennis' credibility, no exceptional circumstance exists in the record to overcome the mandated deference due the ALJ's credibility determination. Eldeco, Inc., 132 F.3d at 1011. Thus, substantial evidence from the record supports the ALJ's credibility determination, and no remand is required on this basis.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment (ECF No. 17), and DENY Dennis's Motion for Summary Judgment (ECF No. 15).

## VI.    REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file written objections to the foregoing findings and recommendations within fourteen days from the date of service of this Report on the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/

Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

June 20, 2018